IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| RUTH E. KANTOR, M.D., | : | |
| | : | |
| v. | : | Civil Action No. DKC 20-2475 |
| | : | |
| XAVIER BECERRA,[1] in his official capacity as Secretary of the Department of Health and Human Services | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action for judicial review of an adverse agency decision is Defendant's Motion to Dismiss (ECF No. 12).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be denied and the parties will be directed to show cause why the case should not be remanded.

**I.   Background**

The following facts are derived from the administrative record preceding this appeal and the pleadings.

**A.   The Statutory and Regulatory Framework**

Medicare is a federally funded health insurance program for the elderly and disabled.  It is governed by Title XVIII of the

---

[1] The complaint named Alex M. Azar, former Secretary of Health and Human Services ("HHS") as Defendant.  (ECF No. 1).  As of the time of the filing of this opinion, Xavier Becerra now serves as HHS Secretary ("Secretary").  Pursuant to Fed.R.Civ.P. 25(d), Secretary Becerra is automatically substituted as a party to this action.

Social Security Act, codified at 42 U.S.C. §§ 1395-1395gg.  The Centers for Medicare & Medicaid Services ("CMS") of the United States Department of Health and Human Services ("HHS") is responsible for administering the Medicare Program, which consists of four basic parts, Parts A through D.  Part B of the Medicare Program ("Part B") authorizes payment for "medical and other health services" including certain out-patient prescription drugs. 42 U.S.C. § 1395k.  This case concerns Part B because it involves the out-patient administration of a prescription cancer-treatment drug.  Physicians who provide services under Part B ("providers") may submit claims to Medicare for reimbursement for the costs of purchasing and administering out-patient prescription drugs found to be "reasonable and necessary for the diagnosis and treatment of illness[.]"  42 U.S.C. § 1395y(a).

**B.   The Medicare Payment System and Appeals Process**

The Part B reimbursement system is administered by CMS in conjunction with private contractors known as Medicare Administrative Contractors ("MACs").  *See* 42 U.S.C. § 1395kk-1. MACs typically authorize payment of claims immediately upon receipt of the claims, so long as such claims do not contain obvious irregularities.  Later, post-payment audits may be conducted either by MACs or by independent auditors.  *See* Medicare Program Integrity Manual, CMS Pub. No. 100-08, Ch. 3, § 3.2.2.  If billing irregularities are discovered in a post-payment audit, overpayments are assessed and recouped from the provider.  *See* 42

C.F.R. §§ 405.370, 405.371(a)(2).  A provider who disagrees with an overpayment assessment is entitled to five levels of administrative review:  (1) a redetermination by a MAC employee not involved in the initial overpayment determination, *see id*. §§ 405.940-405.958; (2) a reconsideration by a Qualified Independent Contractor ("QIC"), *see id*. §§ 405.960, 405.976(b); (3) a hearing before an Administrative Law Judge ("ALJ"), *see id*. §§ 405.1000, 405.1002(a); (4) de novo review by the Medicare Appeals Council (the "Council"),[2] either at the request of the provider, by referral from a MAC, or upon the Council's own motion, *see id*. §§ 405.1100, 405.1102(a), 405.1110; and (5) judicial review in federal court, *see* 42 U.S.C. § 405(g).

### C.   Factual and Procedural Background

Plaintiff, Dr. Ruth E. Kantor ("Dr. Kantor"), is a medical doctor practicing in oncology and internal medicine in Baltimore, Maryland.   Between February 2010 and August 2012, Plaintiff purchased and administered seventeen doses of Avastin, an injectable cancer treatment drug, to her terminally ill cancer patient, Paulette D. Witherspoon.  Dr. Kantor then submitted claims for reimbursement for such costs to Medicare, which totaled approximately fifty thousand dollars.  Initially, the claims were approved and Dr. Kantor's expenses were reimbursed.  It was

---

[2] The Council's decision becomes the Secretary's decision and is the final agency decision for purposes of judicial review. *See* 42 C.F.R. § 405.1136(d).

subsequently determined, however, during a post-payment audit that Dr. Kantor was *not* entitled to reimbursement for the funds that she had expended on Ms. Witherspoon's behalf.  Disagreeing with this decision, Dr. Kantor initiated the five-level administrative appeals process, culminating in her filing of the instant complaint in this court requesting judicial review of the Secretary's decision.  (ECF No. 1).

   While the parties have not formally moved for summary judgment, the Secretary produced and filed the administrative record in this case on November 4, 2020.  (*See* ECF Nos. 11-1 – 11-3).  Because, as detailed below, the court may only consider the administrative record in making its determination in this case, *see Camp v. Pitts*, 411 U.S. 138, 142 (1973), the case is ripe for disposition and the court now rules on the basis of the administrative record alone.  The arguments advanced by the parties in the context of the motion to dismiss for failure to exhaust administrative remedies in reality address the ultimate question, whether the agency's determination was arbitrary and capricious.

## II.  Judicial Review of the Secretary's Decision

> The Medicare Act provides for judicial review of final decisions by the Secretary of Health and Human Services regarding benefits paid under Medicare Part B.  42 U.S.C. §§ 1395ff(a),(b).  Review is to be based solely on the administrative record.  42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)(2)(a)).  Review of the Secretary's decision is governed, moreover, by the Administrative Procedure Act, 5 U.S.C. §§ 701–706, which provides that the Agency's

> decision will be set aside only if it found to
> be "arbitrary and capricious, an abuse of
> discretion, or otherwise not in accordance
> with the law . . . or unsupported by
> substantial evidence." 5 U.S.C.
> § 706(2)(A),(E); *Natural Resources Defense
> Council v. U.S. Environmental Protection
> Agency*, 16 F.3d 1395, 1400 (4th Cir. 1993).

*MacKenzie Med. Supply, Inc. v. Leavitt*, 419 F. Supp. 2d 766, 770 (D.Md. 2006), *aff'd*, 506 F.3d 341 (4th Cir. 2007). "Because the facts are restricted to those in the administrative record, the court here is primarily concerned with issues of law." *Id*. "[I]t is the [c]ourt's role to 'determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Abington Mem'l Hosp. v. Burwell*, 216 F. Supp. 3d 110, 129 (D.D.C. 2016) (quoting S*tyrene Info. & Research Ctr., Inc. v. Sebelius*, 944 F.Supp.2d 71, 77 (D.D.C. 2013)). "In short, when a district court reviews agency action, it 'sits as an appellate tribunal, and [t]he entire case on review is a question of law.'" *Id.* (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

In determining whether agency action is arbitrary and capricious, the reviewing court must "consider whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). At a minimum, the agency must have considered relevant

data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Id.*

> An agency action usually is arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *[State Farm,* 463 U.S. at 43]; *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (explaining that "'[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.'").

*Fund for Animals v. Williams*, 391 F. Supp. 2d 132, 136 (D.D.C. 2005).

## III. Analysis

### A.   Findings from the Administrative Record

Plaintiff's efforts to exhaust her administrative remedies from the initial overpayment determination through the filing of her complaint in district court are as follows.  Dr. Kantor submitted a claim to Medicare for reimbursement for the costs of administering seventeen injections of Avastin to Ms. Witherspoon. Initially, reimbursement was authorized.  During a subsequent third-party audit, however, it was determined that Dr. Kantor should not have been reimbursed for any of the seventeen injections.  Accordingly, on May 14, 2014, CMS sent Dr. Kantor a notice requesting that she refund the auditor identified overpayment.  On July 21, 2014, CMS sent Dr. Kantor a follow-up

notice informing her that the debt was delinquent and would soon be offset by deducting funds from reimbursement payments owed to her for treatment of other patients. (AR99-101).[3] Plaintiff disagreed that she was not entitled to reimbursement and initiated the five-level administrative appeals process.

### 1.   First Level of Appeal: Redetermination by a MAC

Plaintiff, through her billing service, first requested a redetermination of the overpayment decision to the regional MAC, Novitas Solutions, Inc. ("Novitas"). After much back and forth, Novitas determined that the first purchase was eligible for reimbursement but stated that it could no longer work on the case and never issued a decision regarding the remainder and did not issue a written decision. (*See* AR125-26).[4]

### 2.   Second Level of Appeal: Reconsideration by a QIC

Thus, on August 20, 2014, Plaintiff filed a request for reconsideration with the QIC, C2C Solutions, Inc. ("C2C

---

[3] Citations to "AR" refer to the administrative record, (ECF Nos. 11-1 – 11-3).

[4] The communications between Plaintiff and Novitas at the first-level redetermination stage do not appear in the administrative record. The record, however, does contain a letter from Plaintiff's attorney to the QIC recounting the details of what transpired at this stage. (*See* AR125-26). Plaintiff clearly initiated the first-level appeal but claims that the MAC failed ever to provide her with a written decision as required in 42 C.F.R. § 405.956(a)(1). (*See* 42 C.F.R. § 405.956(a)(1)) ("Written notice of a redetermination affirming, in whole or in part, the initial determination must be mailed or otherwise transmitted to all parties at their last known addresses in accordance with the time frames established in § 405.950.").

Solutions"). (AR137). On September 8, 2014, C2C Solutions sent Dr. Kantor a notice informing her that her request for reconsideration had been dismissed because it did not contain the correct Medicare health insurance claim numbers for Ms. Witherspoon. (AR111). The notice further stated that Dr. Kantor could refile her request with the necessary information. Dr. Kantor responded on September 24, 2014, with a list of corrected claim numbers. (AR117). On October 3, 2014, upon receipt of the corrected information, C2C Solutions sent Dr. Kantor a notice stating that it was vacating its September 8, 2014 dismissal and reopening the case. (AR88).

On October 9, 2014, C2C Solutions reached out to Novitas requesting the redetermination casefile below. Novitas returned a "Redetermination Case File Request" indicating that each of Plaintiff's claims lacked a redetermination decision. (AR120-21). On October 20, 2014, C2C Solutions reached out to Novitas again with a "Second Request" for the casefile and instructed Novitas to send its response within twenty-four hours. Novitas returned the form stating that it was duplicative of the casefile request sent on October 9, 2014. (AR122-124).

On November 18, 2014, C2C Solutions sent Dr. Kantor a notice stating that her request for reconsideration had again been dismissed-this time because there was not a redetermination (first

level of appeal) conducted by Novitas below.[5]  (AR84-85).  The
notice stated that Plaintiff must first appeal to Novitas, and
critically, that, if she disagreed with the dismissal, she had two
options:

> 1. If you think you have good and sufficient
> cause or we have made an error, you may ask us
> to vacate our dismissal in accordance with 42
> [C.F.R.] § 405.972(d).  We will vacate our
> dismissal if we determine you have good and
> sufficient cause.  If you want to request that
> we vacate this dismissal, you must file a
> request within 6 months of the date of this
> notice.  In your request, please explain why
> you believe you have good and sufficient
> cause. . . .
> 2. If you think we have incorrectly dismissed
> your request (for example, you believe that a
> redetermination was conducted), you may
> request a hearing by an Administrative Law
> Judge (ALJ) pursuant to 42 [C.F.R.] Section
> 405.1004.  The amount in controversy must be
> over $140, and your request must be filed
> within sixty days of receipt of this letter.
> The ALJ will have 90 days to complete the
> review.  In your request, please explain why
> you believe the dismissal was incorrect.  The
> ALJ's review will be limited to whether the
> dismissal was appropriate based on the
> evidence in the case at the time of the QIC's
> review.  If the ALJ determines that that QIC's
> dismissal was in error, he or she vacates the
> dismissal and remands the case to the QIC for
> a reconsideration.

(AR84-85).  Because Novitas made clear that Novitas could no longer

work on the case, Dr. Kantor believed she had done all she possibly

---

[5] Presumably, C2C Solutions reached this conclusion based on
the response Novitas sent on October 9, 2014 stating that the
claims lacked a redetermination decision.  *See* 42 C.F.R.
§ 405.972(b)(6)) ("A QIC dismisses a reconsideration request . . .
[w]hen the contractor has not issued a redetermination on the
initial determination for which a reconsideration is sought.").

could at the redetermination stage and therefore, had good and

sufficient cause for requesting vacatur of the QIC's dismissal.

Thus, Dr. Kantor, through her attorney, requested that C2C

Solutions vacate its dismissal.[6]   The May 11, 2015 request, titled

"Request that the November 18, 2014 Dismissal be Vacated" stated:

> I represent Dr. Ruth Kantor.  In a letter dated
> November 18, 2014 . . . Dr. Kantor was informed
> that her "request for reconsideration has been
> dismissed," and that she has the right to
> "file a request [that the dismissal be
> vacated] within 6 months of the date of this
> notice."  On behalf of Dr. Kantor, for the
> following reasons, I respectfully request that
> the dismissal be vacated . . . Dr. Kantor is
> entitled to reimbursement for the expenses she
> incurred while treating a cancer patient named
> Paulette D. Witherspoon . . . At some point,
> however, an employee of Performance Recovery,
> Inc. (a company hired by Medicare to audit
> claims for reimbursement) concluded that Dr.
> Kantor should not have been reimbursed . . .
> Dr. Kantor's billing service noted an appeal
> on her behalf, and provided appropriate
> documentation to Novitas Solutions, Inc.
> After being provided with everything
> requested, Novitas informed Dr. Kantor's
> billing service that her appeal had been
> transferred to C2C Solutions, Inc.
> Thereafter, Dr. Kantor's billing service was
> notified that the denial of Dr. Kantor's
> claims was being upheld based upon the medical

---

[6] In her complaint, Dr. Kantor asserts that she initially
requested that C2C Solutions vacate its dismissal on December 8,
2014 and that the May 11, 2015 request for vacatur was a follow-
up request.  While Dr. Kantor attaches a copy of the purported
December 8th letter to her complaint, (see ECF No. 1-3), it does
not appear in the administrative record.  The government argues
that the court cannot consider this letter because it is not part
of the formal administrative record.  While correct, this argument
is of no consequence because the May 11, 2015 letter *is* contained
in the administrative record and was timely.  Thus, the existence
of the December 8, 2014 letter is not dispositive of any relevant
issue in this case.

> notes, and that the claims were being returned
> to Novitas . . . [and] ultimately [she was]
> informed by Debbie Conrad- a Novitas employee-
> that Novitas could no longer work on this
> case.

(AR125-26).   Critically,  C2C  Solutions  improperly  characterized this  request  for  vacatur  as  a  "request  for  reconsideration." Accordingly,  on  June  11,  2015,  C2C  Solutions  sent  Dr.  Kantor  a notice  stating  that  it  had  received  her  "reconsideration  request" and  "ha[d]  determined  that  this  request  [wa]s  a  duplicate submission  of  the  request  for  reconsideration  that  led  to  the November  18,  2014  dismissal."  (AR82).   The  notice  did  not  attach a  copy  of  the  original  request  for  reconsideration  that  C2C Solutions  believed  was  duplicated.   Despite  C2C  Solution's labeling,  however,  it  was  clear  that  Dr.  Kantor's  May  11th  letter was  *not*  a  duplicate  request  for  reconsideration.   The  letter  stated multiple  times  throughout  that  Dr.  Kantor  was  seeking  vacatur  of the  November  18,  2014  dismissal.   Because  C2C  Solutions  mistakenly characterized  Dr.  Kantor's  request  for  vacatur  as  a  duplicate request  for  reconsideration,  no  new  appeal  rights  were  provided. Dr.  Kantor's  claim  had  seemingly  reached  a  dead  end  as  C2C Solutions  indicated  it  would  take  no  further  action  on  the  matter.[7]

### 3.   Third Level of Appeal: Decision by an ALJ

Lacking  any  instruction  on  how  to  appeal  this  assertedly incorrect  decision,  Dr.  Kantor  filed  a  request  for  an  ALJ  hearing

---

[7] While  the  import  of  the  letter  as  a  request  to  vacate  the dismissal  is  unmistakable,  Dr.  Kantor's  attorney  unfortunately

on August 5, 2015.  (AR55-60 & 129-40).  The assigned ALJ took no action on the matter for four years.  Finally, on August 7, 2019, the ALJ ordered dismissal stating that Dr. Kantor's request for a hearing was untimely.  The ALJ concluded that the request was untimely because it was not filed within 60 days of the November 18, 2014 QIC dismissal notice:

> In this case, the reconsideration was issued on November 18, 2014.  The appellant's request for hearing was received on August 6, 2015, which was more than 60 calendar days after the date of presumed receipt and is not timely . . .
> The appellant did not provide a reason for the untimely filing of the request for hearing, and there is no indication of any limitations that prevented the appellant from understanding the need to timely file the appeal, or from doing so.  As a result, there is insufficient evidence to establish good cause within the meaning of 42 C.F.R. [§] 405.942(b)(2) and (3) to extend the time period to file the request for hearing.

(AR10).

---

concluded the request by stating: "Please contact me at your convenience if there are any materials that you need in order to decide this request for reconsideration, or if there is anything else that I can do to be of assistance."  (AR126).  In addition, the second to last paragraph of the request stated: "Under the circumstances, I request that C2C Solutions, Inc. (1) grant this motion for reconsideration, (2) review the medical documentation mailed (and faxed) to Novitas on several occasions by Dr. Kantor's billing service-or direct that Novitas conduct such a review, and (3) conclude that Dr. Kantor is entitled to reimbursement of the expenses she incurred on behalf of Paulette D. Witherspoon." (*Id.*).  The context of the letter, however, made clear that any references to "reconsideration" were intended to mean that C2C Solutions should *reevaluate* its decision to dismiss Dr. Kantor's appeal.

**4.   Fourth Level of Appeal: Review by the Medicare Appeals Council**

Plaintiff appealed the ALJ's dismissal to the Medicare Appeals Council ("Council") on October 4, 2019.  (*See* AR04-08) (ALJ Appeal No. 1-3599522967).  The Council found that Plaintiff lacked a right to review because the ALJ had dismissed her case without ruling on the merits.  *See* 42 C.F.R. § 405.1102(c) ("A party does not have the right to seek Council review of an ALJ's . . . dismissal of a request for review of a QIC dismissal.").  Accordingly, on June 25, 2020, the Council dismissed Plaintiff's request for review.  (*See* AR01-03).  The Council's dismissal notice stated that Plaintiff could request judicial review within sixty days of receipt of the notice, and that such notice is presumed received within five days after its issue date per 42 C.F.R. § 405.1136(c)(2).  Accordingly, Plaintiff had until August 30, 2020 to request judicial review.  (*Id.*).

**5.   Fifth Level of Appeal: Judicial Review in Federal District Court**

On August 27, 2020, Plaintiff filed a timely complaint for judicial review of agency action in the United States District Court for the District of Maryland.  Plaintiff's complaint alleges that she was incorrectly found to have received overpayment from Medicare and that subsequently, her claims were improperly rejected on procedural grounds.  (ECF No. 1).

**B.    Motion to Dismiss for Failure to Exhaust Administrative Remedies**

The Secretary moves to dismiss arguing that Plaintiff has failed to state a claim under Fed.R.Civ.P. 12(b)(6) because she failed to exhaust her administrative remedies and has not received a "final decision" of the Secretary "made after a hearing" as required to obtain judicial review under 42 U.S.C. § 405(g).[8]  The Secretary contends that:

> [J]udicial review of the denial of claims for Medicare reimbursement . . . requires a "final decision" of the Secretary . . . which, in turn requires both presentment of a claim and exhaustion of administrative remedies.  *See* 42 U.S.C. § 1395ff(b)(1)(A).   A dismissal on procedural grounds, however, is not considered an appealable "final decision" because it does not address the merits of the claim. Plaintiff failed to exhaust her administrative remedies because the decision below [by the ALJ and later, the Council] turned on procedural grounds[,] . . . [a]s a result, the Secretary has not issued a decision on the merits . . . and thus, there is no final decision that can serve as the basis for judicial review.

---

[8] 42 U.S.C. § 1395ff(b)(1)(A) provides that "any individual dissatisfied with any initial determination . . . shall be entitled to reconsideration of the determination, and subject to [time limits and amount in controversy requirements], to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."  42 U.S.C. § 405(g) provides that: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."

(ECF No. 12-1, at 1-2).   In *Smith v. Berryhill*, the Supreme Court held that "a dismissal by the Appeals Council on timeliness grounds after a claimant has received an ALJ hearing on the merits qualifies as a final decision . . . made after a hearing for purposes of allowing judicial review under § 405(g)." *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019).   The Secretary acknowledges, however, that the Court "expressly declined to address the situation presented here" where a claimant "faltered at an earlier step-*e.g.*, [their] request for an ALJ hearing was dismissed as untimely and [claimant] then appealed that determination to the Appeals Council before seeking judicial review." (ECF No. 12-1, at 10-11) (citing *id.*, at 1777 n.17). Nonetheless, the Secretary argues that "courts considering similar facts have continued to find that dismissals based on procedural default without a hearing should be dismissed." (*Id.*, at 11).

The cases cited by the Secretary did not involve similar facts.   The first case cited by the Secretary is *Lane v. Azar*, No. CV GLR-19-03183, 2020 WL 3498157 (D.Md. June 29, 2020), appeal dismissed, No. 20-1757, 2020 WL 7977732 (4th Cir. Sept. 10, 2020). There, the plaintiff was a doctor on the verge of defaulting on several government-subsidized educational loans.   To avoid exclusion from Medicare, Medicaid, and all other federal health care programs as a penalty for non-payment, plaintiff executed an agreement in 1999 with the United States Attorney's Office in which he agreed to make monthly payments toward the loans.   He further

agreed that if he defaulted, he waived "all procedural rights, including but not limited to notice, hearing, appeal and administrative and judicial review[.]" (*Id.*, at 2). When he subsequently defaulted nearly *twenty years* later in 2018 and sought an ALJ hearing, his request was dismissed as untimely. His subsequent appeal to the Council was also dismissed. The district court dismissed the case finding plaintiff had failed to exhaust his administrative remedies by failing to request an ALJ hearing in 1999. In the second case cited by the Secretary, *David W. o/b/o K.M.W. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-18-3632, 2020 WL 417392, at \*1 (D.Md. Jan. 27, 2020), *aff'd sub nom. Wilkins v. Comm'r of Soc. Sec.*, 801 F. App'x 184 (4th Cir. 2020), reh'g denied (June 15, 2020), the plaintiff sought judicial review of a decision by the Commissioner of Social Security to delay payment of benefits to plaintiff's minor son until a representative payee was found to receive payments on the minor's behalf. Without ever requesting reconsideration, the plaintiff attempted to obtain judicial review of the decision in district court. The district court promptly dismissed, finding that the plaintiff had failed to exhaust his administrative remedies. While the plaintiffs in the cases cited by the Secretary undoubtedly lacked good cause for extending the filing deadline, the same is not true in the instant case because, as discussed above, the record demonstrates that Dr. Kantor fully complied with the instructions given to her at each stage of the administrative process. She did not sit on her heels, allow the

deadline to lapse, and then seek review.  Likewise, neither of the cases involves a scenario in which the plaintiff received incomplete and misleading information by the administrative contractors below.[9]

Essentially, the Secretary asks the court to accept the conclusion that, if a claimant exercises her right to request vacatur of a QIC dismissal and that request is denied-or is disregarded because of an administrative error as is the case here-she has waived her right to appeal to an ALJ and has no further recourse.  The court cannot accept this conclusion because doing so would unfairly penalize Dr. Kantor for following the precise instructions given to her by the QIC and for the ALJ's failure to recognize and correct that error.  As the Eleventh Circuit stated in *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), the Secretary's argument "makes linguistic but not legal sense." A claimant could not seek further administrative review because she has exhausted all of her administrative remedies, and yet, she is also foreclosed from judicial review because she has *not* exhausted her administrative remedies.  Under the Secretary's reasoning, the claimant would never have a "final" decision and "would [be] le[ft] . . . permanently in limbo."  *Id.*

---

[9] The remaining three cases of non-binding precedent cited by the Secretary but not discussed herein are also factually distinguishable from this case as they involve plaintiffs who failed to appear for a scheduled ALJ hearing or failed timely to request a hearing.

Plaintiff complied with all the required steps established by law and yet was shut out of the administrative review process because of errors committed by the MAC, the QIC, and the ALJ. Accordingly, Plaintiff has sufficiently exhausted her administrative remedies and is not precluded from judicial review. The Secretary's motion to dismiss will be denied.

### C.  Further Determinations

The determination that Plaintiff has stated a claim may well be dispositive of the merits as well, leading to a determination that the Agency's decision was arbitrary and capricious.  The logic is as follows:

In requesting vacatur of the QIC's dismissal rather than ALJ review, Dr. Kantor followed the precise instructions provided to her in the November 18, 2014 dismissal notice.  The notice expressly stated that if Dr. Kantor disagreed with the QIC's decision, she had *two* options: She could either request vacatur of the dismissal within six months or appeal the dismissal to an ALJ within sixty days.  Nothing in the letter stated that if Dr. Kantor pursued the vacatur option, she waived her right to appeal the dismissal to an ALJ.[10]   Likewise, the regulations contain no

---

[10]    Arguably, the QIC's notice violated 42 U.S.C. § 1395ff(c)(3)(E) which states that "[a]ny decision with respect to a reconsideration of a [QIC] *shall . . . be written in a manner calculated to be understood by the individual . . . enrolled under Part B . . . and [include] a notification of the right to appeal* such determination *and instructions on how to initiate such appeal under this section*[.]"

indication that requesting vacatur of a QIC dismissal has the effect of waiving a claimant's right to an ALJ Hearing.   To the contrary, the regulations contemplate that that an unfavorable request for vacatur decision is properly appealed to an ALJ. Section 405.972(e) states that the effect of a QIC dismissal is binding "*unless it is modified or reversed by an ALJ* or attorney adjudicator under 405.1004 or vacated under paragraph (d) of this section."   Section 405.1004(b) provides that an ALJ may "determine[] that the QIC's dismissal was in error, [and] vacate[] the dismissal and remand[] the cause to the QIC for a reconsideration in accordance with 405.1056."

Section 405.1052(b)(2) further states that "[a]n ALJ . . . dismisses a request for review of a QIC dismissal [if] [] [t]he party did not request a review within the stated time period and the ALJ . . . has not found good cause for extending the deadline, as provided in 405.1014(e)."   Section 405.1014(e) states that: "[t]o determine whether good cause for late filing exits, the ALJ uses the standards set forth in 405.942(b)(2) and (3)."   Section 405.942(b) states that one of the considerations for determining whether a party has good cause for missing a deadline includes "[i]f the contractor's action(s) misled the party."   Section 405.942(c) expressly states that an example of good cause includes where "[t]he contractor gave the party incorrect or incomplete information about when and how to request a redetermination."

That is precisely the case here.  The QIC provided Dr. Kantor with incorrect and incomplete information as nothing in the notice indicated that the cost of seeking vacatur was waiving one's right to appeal to an ALJ.  If the notice intended to state that exercising the vacatur option would waive the right to appeal to an ALJ, it should have stated so in clear and unambiguous terms.  It did not.  Thus, the record belies the ALJ's conclusion that "there is no indication of any limitations that prevented the appellant from understanding the need to timely file the appeal, or from doing so."  (AR10).  To the contrary, the record before the ALJ made clear that the instructions provided in the QIC's dismissal notice misled Dr. Kantor and prevented her from understanding the need to file her request for ALJ review within sixty days.  (*See* AR10).  The ALJ's conclusion that Plaintiff lacked good cause for extending the deadline fatally overlooked the details about what transpired below.  Had the ALJ simply reviewed Plaintiff's request for hearing more closely, she would have discovered that the Plaintiff was given incorrect and incomplete information by the QIC and that the QIC then erred a second time in its characterization of her request for vacatur as a duplicate request for reconsideration.  The regulations contemplate that an unfavorable request for vacatur is properly appealed to an ALJ.  Moreover, the ALJ overlooked key details in the record which provided good cause for extending the time for requesting an ALJ hearing.  As a result, it can be said that the

ALJ's decision was arbitrary and capricious and in violation of the Administrative Procedure Act.

## IV.   Conclusion

For the foregoing reasons, the motion to dismiss filed by the Secretary will be denied.  The parties will be given an opportunity to show cause why the case should not be remanded to the Council for further action consistent with this Memorandum Opinion.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
